C. F. LYTLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

C. F. LYTLE CONSTRUCTION CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 33029, 40406.  Promulgated January 30, 1931.

*Robert A. Littleton*, *Esq.*, and *James A. Councilor*, *C. P. A.*, for the petitioners.

*J. E. Marshall*, *Esq.*, and *C. E. Ray*, *Esq.*, for the respondent.

1424

# 1430

OPINION.

MORRIS: The sole question presented by the several issues raised in these proceedings, aside from the third, which has been abandoned, is the proper treatment to be accorded certain expenditures for new equipment made during the taxable years in controversy. The petitioners contend that the expenditures in question constitute a part of the costs of completing the contract jobs on which the equipment was first employed and should be deducted from income in arriving at the gains and losses derived from such jobs. The respondent had held that such expenditures are of a capital nature, made in the acquisition of assets having a useful life extending beyond the completion of the jobs on which first employed, and in excess of one year, which should be added to capital accounts and written off against income, by way of deductions for depreciation, over the period of useful life.

Unquestionably, the accounting for these expenditures contended for by the petitioners would be quite proper and available for the purposes of the tax if the equipment for which the expenditures were made had been acquired solely for the completion of the jobs against which it has been charged and was not suitable, or could not be used, for any other purpose of petitioners' businesses and had to be discarded and abandoned when those jobs were completed. But the facts readily disclose that that is not the case. Except for the concrete mixers first used on the Moville job, the two mixers first used on the Florida job undertaken by the partnership, and the Shawnee tractor used first on the Correctionville job, all of the equipment was continued in use after the jobs on which it was first used had been completed, and in a very substantial way on later jobs. Under the circumstances, to permit the costs of this equipment to be charged against the income derived from the jobs on which the equipment was first used would result in an accounting not truly representative of the facts and, thus, net income would not be clearly reflected.

As to the concrete mixers used on the Moville job and on the Florida job completed by the partnership, and the Shawnee tractor used on the Correctionville job, these items of equipment were entirely used up on those jobs and were of no practical use thereafter. The costs of these items of equipment, less the salvage recovered, constitute proper charges against the jobs on which the equipment was used, in computing the gains and/or losses derived or sustained on those jobs.

The petitioners alternatively contend that, if the cost of equipment should be held to be capital expenditures and not deductible

expenses, they are entitled to depreciate the said cost over the useful life thereof at the rate of 50 per cent per annum. This question is not properly before us, as an examination of the pleadings fails to disclose anywhere therein that the rate of depreciation was placed in controversy. But, if the question were properly presented, we are of the opinion that the petitioners have not overcome the prima facie correctness of the rate of 33⅓ per cent, or the 3-year life, determined by the respondent. While the record is not as clear as it might be respecting individual pieces of machinery and equipment, that is, as to the time of acquirement and final abandonment due to wear and tear in use, the record does show very clearly that the majority of equipment was in use, although possibly after having been overhauled and repaired on several occasions, for a somewhat longer period than two years.

*Decision will be entered under Rule 50.*